# BRAUN v. WAHL.

PATENTS; INTERFERENCE; DILIGENCE.

In an interference involving an improvement in the art of brewing fer-
mented malt beverages, activity on the part of the party first to
conceive, sufficient to relieve him of the charge of want of diligence
at the time his adversary filed his application in a foreign country,
is shown where about a month prior to that date his representative
spoke of the process to the superintendent of the brewing company,
and about a week later explained it to him with a view to having
it tried, and about two weeks thereafter, all of the necessary appa-
ratus having been completed, it was tried and adopted.

No. 1004.   Patent Appeals.   Submitted May 8, 1916.   Decided May 22,
1916.

HEARING on appeal from decision of the Commissioner of
Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. John M. Coit* for the appellant.

*Mr. F. M. Phelps* and *Mr. Philip C. Dyrenforth* for the ap-
pellee.

Mr. Justice ROBB delivered the opinion of the Court:

Appeal from a decision of the Commissioner of Patents in an
interference proceeding awarding priority of invention to the
senior party, Robert Wahl.

The counts sufficiently explained the invention and read as
follows:

"1. As an improvement in the art of brewing fermented malt
beverages, involving the preparation of a malt-mash, drawing

off the wort, and boiling the same with hops, cooling and fermenting, the step which consists in adding to the matter under treatment an extract of malt in the form of a liquor acidulated with lactic acid propagated therein.

"2. As an improvement in the art of brewing fermented malt beverages, involving the preparation of a malt-mash, drawing off the wort and boiling the same with hops, cooling and fermenting, the step which consists in adding to the mash an extract of malt in the form of a liquor acidulated with lactic acid propagated therein."

Ludwig Braun relies for conception and constructive reduction to practice upon an application filed by him in Austria on April 8, 1911. The Examiner of Interferences and the Board of Examiners in Chief agreed that Wahl had established a date of conception of the invention "during the year 1909," but both tribunals ruled that the evidence failed to show diligence on his part at the time of Braun's entry into the field; namely, April 8, 1911. The Commissioner, after a careful review of the evidence, agreed with the lower tribunals that Wahl was the first to conceive, and further ruled that Wahl's evidence showed diligence just prior to the filing of Braun's foreign application, and that Wahl's efforts within a period of two or three weeks resulted in reduction to practice. He therefore awarded priority to Wahl.

Since all the tribunals agreed on the first question, and as the evidence clearly sustains their finding, we shall confine our discussion to the second.

Max Stahl, superintendent of the Keeley Brewing Company and highly skilled in the art, testified that in the month of March, 1911, Dr. Wahl had spoken to him about his new process, involving the use of lactic acid in the brewing of beer; that about a week later Professor Nilson, in the interests of Wahl, called on him and explained the process, with a view to having it tried. While this process, according to the witness, "was against all former teachings," he finally consented to try it and immediately commenced preparations to that end. The

witness stated: "I told him I would be willing to do it, and would let him know when I had made all preparations for introducing this process. Maybe it was more than a week, but I am sure it was not two weeks until I had all the preparations made and notified Professor Nilson by 'phone, and he brought a half a gallon of lactic-acid culture, and I started the first mash in his presence." The witness further stated that he had all the apparatus completed and ready for the installation of the process on April 17, 1911. This date he was enabled to fix by referring to his memorandum book. He further testified that after his reluctance to adopt the process had been overcome by assurances from Dr. Wahl and Professor Nilson, it "took some time to lay out the plans, to put up the tubs, and, after the tubs were finished, to get the steam connections;" that it was about three weeks after the first interview in March before these preparations were complete, and about two weeks after he had consented to adopt the process. Later the witness produced a receipted bill, dated April 13, 1911, "for $2\frac{1}{2}$ inch barrels A. B. angle valves No. 9 and $\frac{1}{2}$ brass A. D. globe valve No. 1," and stated that these were ordered for the steam-line for the propagating tank, which was used in carrying out the process. Witness stated that this bill "strengthens my statement that the time of three weeks elapsing between the talk I had with Professor Nilson and Dr. Wahl and the propagating of the first liquid, as estimated by me, was a very short estimate." Witness continued: "I want to be sure that I am right and I don't want to overestimate myself, so I put it at three weeks."

In our view the testimony of the above witness, which we have carefully read and partially reviewed, clearly shows activity on the part of Wahl prior to April 8, 1911, resulting, as found by the Commissioner, in reduction to practice. The decision, therefore, is affirmed.                                      *Affirmed.*